UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS ZIMMERMAN,

                        Plaintiff,

                                                                                       **DECISION AND ORDER**
         v.                                                                                 12-CV-763-A

SOCIAL WORKER RICHARD PAUTZ,
Mental Health Clinician,
L. PEARL, Mail Clerk,
PAUL CHAPPIUS, Deputy,
DOLCE, Deputy,
VERNON FONDA, Inspector General Director
of Operations,
ROBINSON, Captain,
ALBERT PRACK, Acting Director of Special
Housing,
KAREN BELLAMY, Director of Inmate Grievance
Program,
DEPUTY COMMISIONER KENNETH S. PERLMAN,
J. PRUSAK, Legal Mail Officer,
J. NOETH, Captain,
LIEUTENANT W. MURRAY,
O'CONNELL, Sgt.,
WILLEY, Sgt.,
CAROL KRAUSS, Mailroom Supervisor,
JAMES CONWAY, Former Supt.,
BARTELLA, Sergeant,
CONDONE, Corrections Officer,
HARTMAN, Corrections Officer, and
MEZYDLO, Corrections Officer,

                        Defendants.

      This case was referred to Magistrate Judge Leslie G. Foschio pursuant to 28

U.S.C. § 636(b)(1) for the conduct of pretrial proceedings.

In this *pro se* civil rights lawsuit, Plaintiff Nicholas Zimmerman alleges violations of his constitutional rights pursuant to 42 U.S.C. § 1983, namely, under the First Amendment, Eighth Amendment (*i.e.*, inadequate medical care and excessive force), and Fourteenth Amendment, by Defendants, who are all employees of New York State Department of Corrections and Community Supervision ("DOCCS"). At all times pertinent to this action, Plaintiff was incarcerated at Attica Correctional Facility in Attica, New York (hereinafter, "Attica"), where each of the Defendants was employed.[1]

On June 2, 2020, Magistrate Judge Foschio filed a Report and Recommendation ("R&R") (Dkt. No. 100), recommending that the Court grant Defendants' motion for summary judgment (Dkt. No. 79) in part and deny it in part, so that the Court will schedule the matter for trial on Plaintiff's Eighth Amendment inadequate medical care claim relative to his October 28, 2009 suicide attempt, only.

On June 16, 2020, Defendant Richard Pautz, a Mental Health Clinician with Attica's Office of Mental Health (hereinafter, "Pautz"), filed objections (Dkt. No. 101) to the R&R,[2] specifically as to the one remaining claim where Magistrate Judge Foschio found an issue of fact whether Pautz was deliberately indifferent to Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment by failing to provide Plaintiff adequate medical care, in failing to provide him with adequate mental health services prior to his suicide attempt. The Court then

---

[1] According to the Docket, Plaintiff is currently housed at Wende Correctional Facility.

[2] Pautz aptly notes that the Magistrate Judge's R&R effectively recommends dismissing all defendants from this case other than him.

2

ordered response papers to be filed on or before July 7, 2020 (*see* Dkt. No. 102), but none were filed by Plaintiff.  Pautz subsequently filed a reply (Dkt. No. 104) simply reiterating his request that the Court dismiss the recommended, remaining count on summary judgment, and dismiss the lawsuit in all Defendants' favor.  The Court originally scheduled the objections for oral argument on May 11, 2022, but upon review of the papers deemed argument unnecessary (*see* Dkt. Nos. 105, 106).

To the extent that a party makes a timely and specific objection to a Magistrate Judge's R&R, the standard of review is *de novo*.  28 U.S.C. § 636(b)(1).  Conversely, when a party does not file objections to an R&R, "the court will review it for clear error."  *McElwee v. Marfatia*, Case # 20-CV-6121-FPG, 2021 WL 5449253, 2021 U.S. Dist. LEXIS 225168, *2 (W.D.N.Y. Nov. 15, 2021).  Following the appropriate review, the district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).

Preliminarily, as argued before Magistrate Judge Foschio, Pautz asserts that because Plaintiff's submission (Dkt. No. 98) in response to Defendants' motion for summary judgment did not address the Eighth Amendment denial of adequate medical care claim, for this reason, the Court should accept as unchallenged Pautz's account of the attempted suicide incident and grant summary judgment in his favor.  As noted by the Magistrate Judge, however,

> [W]hen a party, whether pro se or counseled, fails to respond to an opponent's motion for summary judgment, a district court may not enter a default judgment.  Rather, it must examine the movant's statement of undisputed facts and the proffered record support and determine whether

3

> the movant is entitled to summary judgment.  Where a
> partial response to a motion is made -- i.e., referencing
> some claims or defenses but not others -- a distinction
> between pro se and counseled responses is appropriate.
> In the case of a pro se [response], the district court should
> examine every claim or defense with a view to determining
> whether summary judgment is legally and factually
> appropriate.

*Jackson v. Fed. Express*, 766 F.3d 189, 197-198 (2d Cir. 2014).  As such, the Court has reviewed the motion for summary judgment and evidence proffered by Pautz using this framework.

The Court concludes that upon its *de novo* review of the record in this case with respect to this one cause of action, and the pleadings and materials submitted by the parties, Pautz is not entitled to summary judgment for the reasons stated in the R&R as well as those stated herein.

"[T]here are both objective and subjective requirements to succeed on an Eighth Amendment claim regarding serious mental health needs.  First, the danger posed by the deliberate indifference must be 'sufficiently serious' from an *objective* perspective; and second, the defendant must have acted with deliberate indifference to that need (*i.e.*, *subjectively* failed to address the danger)."  *Engles v. Jones*, 6:13-CV-6461 EAW, 2018 WL 6832085, 2018 U.S. Dist. LEXIS 217540, *15 (W.D.N.Y. Dec. 28, 2018) (internal quotation marks and citations omitted, emphases in the original).

The Court concludes that there is a triable question of fact whether the objective component of Plaintiff's deliberate indifference claim can be satisfied—whether he had "a sufficiently serious mental health need between [October 27 and

4

28, 2009], *i.e.*, a propensity to attempt suicide or seriously harm himself." *Barrett v. Livingston Cty.*, Case # 14-CV-6593-FPG, 2019 WL 1083027, 2019 U.S. Dist. LEXIS 36914, *28-29 (W.D.N.Y. Mar. 7, 2019) ("In the context of mental health needs, propensities to attempt suicide, harm oneself, and/or exhibit severe depression or anxiety attacks have been viewed as 'sufficiently serious.'") (internal quotation marks and citations omitted); *see McClemore v. Bosco*, Civil Action No. 9:14-CV-0626 (BKS/DEP), 2018 U.S. Dist. LEXIS 18595, *67 (N.D.N.Y. Feb. 2, 2018) ("[C]ases from within this circuit have observed that mental disorders can represent serious medical needs, particularly when those disorders are accompanied by suicidal ideations and attempts.") (collecting cases), *adopted by* 2018 U.S. Dist. LEXIS 36134 (N.D.N.Y. Mar. 6, 2018); *Sims v. Gorman*, No. 09-CV-6643 (MAT), 2012 WL 566875, 2012 U.S. Dist. LEXIS 21614, *13 (W.D.N.Y. Feb. 21, 2012) ("The Court finds that [the plaintiff]'s diagnosed mental illnesses (bipolar and antisocial personality disorders), and concomitant suicidal ideation and actual suicide attempts, constituted a serious medical need.").

It is undisputed that when Plaintiff expressed to Pautz that he wanted to commit suicide, he had just been released from observation in the Mental Health Unit to the general prison population. At his deposition, Plaintiff testified about the deterioration of his mental health at the time and that he had been housed in the Mental Health Unit because of his depression. He also testified that he "wasn't given [his] medication." (Dkt. No. 79-11, pp. 43-47). In an affidavit, Pautz, on the other hand, averred Plaintiff's records revealed that Plaintiff had never threatened or

attempted suicide before the incident and he was not taking any prescribed medication for depression at the time. (Dkt. No. 79-8).

Thus, there is a question of fact whether Plaintiff had been diagnosed with or treated for depression, or other mental health condition(s). Moreover, he without question conveyed to Pautz that he would potentially attempt suicide. The Court therefore cannot conclude, as a matter of law and on this record, that Plaintiff cannot prove the objective prong at a trial.

As for the subjective component, that Pautz acted with "a sufficiently culpable state of mind . . . , [a]n official acts with the requisite deliberate indifference when that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citations omitted), quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The Court concludes upon viewing the facts in the light most favorable to Plaintiff, the non-moving party, a genuine issue of material fact exists on this prong as well.

It is undisputed that Plaintiff informed Pautz of his intent to take his own life, and that Pautz was aware Plaintiff had just been released from the Mental Health Unit to the general prison population. Moreover, Plaintiff testified that the morning of his suicide attempt, he showed Pautz the handmade noose he was planning to use to effectuate his suicide, and Pautz said, "go ahead and do it" or "I think you're faking, whatever," or in some way responded so that Plaintiff knew Pautz saw the noose. (Dkt. No. 79-11, p. 44). Pautz did not deny this exchange occurred. (*See*

Dkt. No. 79-8).[3]  Rather, he asserted that while he "did not dismiss [P]laintiff's threat as inconsequential," he believed Plaintiff was "in no immediate danger" and was instead feigning a suicidal gesture aimed at manipulating prison personnel to transfer him to his preferred housing either in the Mental Health Unit or back at Auburn Correctional Facility, each of where he had just been transferred from. According to Pautz, this is partly why he took no further steps than he did in responding to Plaintiff's "conditional" threat.  Instead of transferring Plaintiff back to the Mental Health Unit for observation or placing him on suicide watch, Pautz visited Plaintiff twice, promising to delve into his condition and check up on him later, and alerted nearby staff of Plaintiff's condition and asked that they closely monitor him.

Pautz argues that how he chose to handle Plaintiff's conditional suicide threat was a matter of his judgment and discretion as a medical professional, which does not rise to the level of deliberate indifference.  "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation . . . Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim."  *Chance*, 143 F.3d at 703.

---

[3] Pautz now argues that the Magistrate Judge was "mistaken" to find that Pautz did not dispute Plaintiff showed him a handmade noose because his affidavit "specifically notes that 'Plaintiff's allegations are false, or mistaken.'"  Dkt. No. 79-8, ¶ 6.  This statement is taken out of context, however.  The immediately preceding statement by Pautz was, "I understand the plaintiff claims that his constitutional rights were violated, in part, by state officials' deliberate indifference to his mental state."  Dkt. No. 79-8, ¶ 5.  Thus, as read sequentially, Pautz was denying Plaintiff's general allegations that Pautz had been deliberately indifferent in treating Plaintiff.  Then, in Pautz's rendition of the events leading up to Plaintiff's suicide attempt, he did not specifically mention or deny the allegation concerning the noose.  The Court concludes there is at least a triable question of fact whether Plaintiff showed Pautz the noose, and if he did, whether Pautz saw the noose and recognized it as one.

7

"The fact that Plaintiff attempted suicide after medical professionals had examined him and found him not to be a risk of harm to himself does not *itself* establish deliberate indifference." *Robinson v. Taylor*, 9:16-CV-285 (DJS), 2019 WL 1429529, 2019 U.S. LEXIS 53471, *20-21 (N.D.N.Y. Mar. 29, 2019) (internal citation omitted) (emphasis added). Thus, beyond the fact that Plaintiff's statements concerning suicide in this case manifested in attempted suicide, the question remains if Pautz's alleged failure to take more affirmative steps to prevent Plaintiff from attempting suicide "was the product of sound medical judgment, negligence, or deliberate indifference[, which] depends on the facts of the case." *Chance*, 143 F.3d at 703.

Pautz argues that the *Barrett* case, cited by the Magistrate Judge, is distinguishable on its facts. The Court agrees.

The Court in *Barrett* found that there was a triable issue of fact as to whether the medical professional defendant acted with deliberate indifference because a reasonable jury could infer she "knew there was an acute risk" the plaintiff would attempt suicide and yet she "took no action in response." *Barrett*, 2019 U.S. Dist. LEXIS 36914, at *31-32. Conversely, here, Pautz did take some action in response to Plaintiff's threat of suicide.

This case is therefore more factually analogous to other cases where medical providers limited their response to plaintiffs' threats of suicide but still took some action in response, based on their beliefs that the plaintiffs were manipulating medical providers into attaining preferred housing. *See*, *e.g.*, *Robinson*, 2019 U.S. LEXIS 53471, at *19-22 (finding that psychiatrist defendant was not deliberately

8

indifferent to prisoner plaintiff's medical needs even though plaintiff "made multiple statements to [defendant psychiatrist] that if forced to return to [the Special Housing Unit] he would attempt suicide"—because defendant initially continued plaintiff on observation in a unit that treated inmates whose mental health conditions required special treatment, and defendant also prescribed him medication); *Sims*, 2012 U.S. Dist. LEXIS 21614, at *12-18 (concluding that "deliberate indifference [could not] be inferred" from the decision by the Mental Health Unit defendants to not return prisoner plaintiff to the Residential Crisis Treatment Program for psychiatric observation from the Special Housing Unit "despite his history of suicide attempts and the fact that he threatened to harm himself if placed in [the Special Housing Unit," in "[c]onsidering the totality of [plaintiff]'s treatment by the [Mental Health Unit d]efendants and the timing of his suicide threats").

Here, Pautz argues that no jury could reasonably find he was deliberately indifferent and reasons that his "precautionary measures carried the day and saved Plaintiff's life." In that regard, it is undisputed that Plaintiff attempted suicide in the hour when he knew no officers made rounds because of a shift change. Pautz argues that due to increased surveillance ordered by him, staff were able to respond quickly to the attempted suicide despite how Plaintiff strategically timed it.

Despite the case law cited above and based on the particular facts of this case and evidence proffered by Pautz, the Court concludes that, although a close call, it cannot dismiss the deliberate indifference to mental health care claim at this stage. Should a jury credit Plaintiff's testimony concerning Pautz's reaction and/or comments in response to being shown the makeshift noose after Plaintiff informed

9

Pautz of his suicidal plans, it could reasonably conclude that Pautz was deliberately indifferent to Plaintiff's serious mental health needs, in other words, his propensity to attempt suicide or otherwise harm himself.  If taken as true, with all reasonable inferences drawn in Plaintiff's favor, the jury could conclude that Pautz had a culpable state of mind and that his choice of treatment did not originate from sound medical judgment.  "[T]his Court may not resolve factual disputes or credibility issues on summary judgment.  That task is reserved for the jury." *Barrett*, 2019 U.S. Dist. LEXIS 36914, at *35.

Pautz argues in the alternative that qualified immunity warrants dismissal of this cause of action.  The Court disagrees.  *See* Dkt. No. 100, p. 50; *see Hamilton v. Mead*, 9:19-cv-257 (GLS/ATB), 2021 WL 4066542, 2021 U.S. Dist. LEXIS 168697, *12 (N.D.N.Y. Sept. 7, 2021).

Upon review of the R&R and the underlying record, it is hereby

**ORDERED**, pursuant to 28 U.S.C. § 636(b)(1) and for the reasons set forth in Magistrate Judge Foschio's R&R (Dkt. No. 100) and herein, and upon *de novo* review, Defendants' motion for summary judgment (Dkt. No. 79) is DENIED in part with respect to Plaintiff's Eighth Amendment inadequate mental health treatment claim against Pautz, and upon clear error review, Defendants' motion is GRANTED in part with respect to the remaining claims, to which no objections have been filed; and it is further

**ORDERED** that this case is recommitted to Magistrate Judge Foschio for further proceedings.

**IT IS SO ORDERED.**

                                        *s/Richard J. Arcara*
                              HONORABLE RICHARD J. ARCARA
                              UNITED STATES DISTRICT COURT

Dated:  May 4, 2022
          Buffalo, New York